**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

UNITED STATES OF AMERICA

v.                                                    Criminal No. 3:06cr126

DAVID LEROY KNELLINGER

**MEMORANDUM OPINION**

This matter is before the Court on the Supplemental Brief in
Support of Motion to Dismiss (Docket No. 46) filed by the
defendant, David Leroy Knellinger, in which Knellinger asserts that
18 U.S.C. § 3509(m) is both invalid and unconstitutional.  For the
following reasons, Knellinger's motion is denied.  However,
Knellinger's request for a mirror image copy of his computer hard
drive, which contains the child pornography images listed in the
Superseding Indictment (Docket No. 14), is granted subject to the
entry of an appropriate protective order and a certification by
counsel for Knellinger that he will use that copy for assessment
and preparation of a defense.

**BACKGROUND**

Knellinger stands charged with seven counts of transporting,
attempting to transport, receiving, and possessing child
pornography (Docket No. 14).  The statutory maximum sentence faced
by Knellinger is twenty years imprisonment on each count.  On July
17, 2006, Knellinger filed a Motion for Independent Analysis of
Physical Evidence and Protection Order (Docket No. 21), in which he

requested a copy of the computer hard drive that was seized during a search of his residence and that now is in the possession of law enforcement authorities.  That hard drive contains the images of child pornography at issue in this case, and Knellinger's counsel sought a copy of the hard drive so that computer experts could examine it, and the images contained therein, to help counsel ascertain therefrom the basis for a defense to the pending charges. During a telephone conference on July 26, 2006, the United States agreed to provide Knellinger with a mirror image copy of his computer hard drive and, accordingly, the Court denied as moot Knellinger's Motion for Independent Analysis (Docket No. 31).

However, the very next day, on July 27, 2006, the Adam Walsh Child Protection and Safety Act, Pub. L. No. 109-248, 120 Stat. 587 (2006), was signed into law.  A provision of that statute, codified at 18 U.S.C. § 3509(m), requires that child pornography remain in the custody of the United States or the Court, and prohibits a defendant from obtaining copies thereof so long as the United States provides the defendant "ample opportunity for inspection, viewing, and examination" of the child pornography "at a Government facility."  Because of this new law, the United States told Knellinger that it could not honor its agreement to turn over a mirror image copy of his computer hard drive, and the United States has been in sole possession of the child pornography images ever since.

2

At a hearing on August 28, 2006, Knellinger raised a challenge to the constitutionality of 18 U.S.C. § 3509(m). Knellinger claimed that he is constitutionally entitled to copies of the child pornography that will be presented as evidence against him and that 18 U.S.C. § 3509(m) violates the Constitution by preventing him from having those copies. The Court asked the parties to brief the issue, invited *amicus* briefs from the National Association of Criminal Defense Lawyers, the Federal Public Defender, and the University of Richmond Law School, and held an evidentiary hearing on November 6, 2006 to determine whether 18 U.S.C. § 3509(m) violates Knellinger's rights under the United States Constitution.

## DISCUSSION

As described above, Knellinger's primary objection to 18 U.S.C. § 3509(m) is that it prevents him from obtaining a copy of the child pornography in this case for independent examination. Section 3509(m) reads as follows:

> (M) Prohibition on reproduction of child pornography. --
>
> (1) In any criminal proceeding, any property or material that constitutes child pornography (as defined by section 2256 of this title) shall remain in the care, custody, and control of either the Government or the court.
>
> (2)(A) Notwithstanding Rule 16 of the Federal Rules of Civil Procedure, <u>a court shall deny, in any criminal proceeding, any request by the defendant to copy</u>, photograph, duplicate, or

3

otherwise reproduce <u>any property or material
that constitutes child pornography</u> (as defined
by section 2256 of this title), <u>so long as the
Government makes the property or material
reasonably available to the defendant</u>.

(B) For the purposes of subparagraph (A),
property or material shall be deemed to be
reasonably available to the defendant if the
Government provides <u>ample opportunity</u> for
inspection, viewing, and examination at a
Government facility of the property or
material by the defendant, his or her
attorney, and any individual the defendant may
seek to qualify to furnish expert testimony at
trial.

18 U.S.C. § 3509(m) (emphasis added).  As Knellinger correctly
points out, the effect of the statute is to prevent the Court from
ordering the United States to provide Knellinger with a copy of the
child pornography in this case so long as the United States makes
that material "reasonably available" to Knellinger in a Government
facility.  The upshot is that Knellinger's counsel has not been
able to conduct the type of examination that he feels is necessary
to assess effective defenses to the very serious charges that
Knellinger now faces.  For that reason, Knellinger challenges the
validity of § 3509(m).  He first argues that § 3509(m) is an
invalid amendment to the Federal Rules of Criminal Procedure.  He
also asserts that § 3509(m) is unconstitutional, both facially and
as applied in this case.  Knellinger seeks either dismissal of the
indictment or a copy of the child pornography that will be
presented as evidence against him.

4

### A.   Knellinger's Assertion That § 3509(m) Offends The Rules Enabling Act

Knellinger contends that § 3509(m) is invalid because it promulgates a rule of criminal procedure, thereby amending a current rule, without following the requirements of the Rules Enabling Act, 28 U.S.C. § 2071 et seq.  This challenge to the power of Congress lacks merit.  Congress at all times retains the authority to enact statutes affecting federal rules of procedure. As the Fifth Circuit summarized in Jackson v. Stinnett:

> It has long been settled that Congress has the authority to regulate matters of practice and procedure in the federal courts. ... Congress delegated some of this power in 1934 by passing the Rules Enabling Act, which gave the Supreme Court the power to promulgate rules of practice and procedure for United States courts. ... Although Congress has authorized the Court to exercise some legislative authority to regulate the courts, Congress at all times maintains the power to repeal, amend, or supersede its delegation of authority or the rules of procedure themselves.

102 F.3d 132, 134-35 (5th Cir. 1996) (citations omitted).  Indeed, Congress often has enacted statutes that repeal, amend, or supercede existing rules of federal procedure, and courts consistently upheld the power of Congress to do so.  See, e.g., Floyd v. United States Postal Service, 105 F.3d 274, 277-78 (6th Cir. 1997) (upholding provisions of the Prison Litigation Reform Act which conflicted with the Federal Rules of Appellate Procedure); United States v. Mitchell, 397 F. Supp. 166, 170

(D.D.C. 1974), <u>aff'd sub nom</u>, <u>United States v. Haldeman</u>, 559 F.2d 31 (D.C. Cir. 1976) (upholding authority of Congress to extend the life of a federal grand jury beyond the expiration date prescribed by Rule 6 of the Federal Rules of Criminal Procedure).  Given the ultimate Congressional authority over the federal rules of procedure, there is no merit to Knellinger's argument that Congress ran afoul of the Rules Enabling Act by passing a subsequent statute that also affects the rules of federal criminal procedure.

**B.   Knellinger's Constitutional Challenges To § 3509(m)**

**1.   Separation of Powers**

In ways that are neither adequately explained nor readily apparent, Knellinger asserts that § 3509(m) offends the constitutionally-imposed separation of powers between the legislative and the judicial branches of government.  The argument amounts to an assertion that Congress cannot tell "an Article III court how to rule on a motion before it."  (Def's Reply to United States' Resp. in Opp. to Def.'s Supp. Br. in Supp. of Mot. to Dismiss "Def.'s Reply" at 15.)  This contention appears to be predicated on the arguments respecting the Rules Enabling Act, and, to that extent, is meritless for the reasons explained above.

In any event, this argument, which was unaccompanied by citation in Knellinger's Supplemental Brief in Support of Motion to Dismiss (Docket No. 46), and was accompanied only by indiscriminate inapposite citation in his Reply (Docket No. 50), was not raised

during or after the evidentiary hearing on November 6, 2006, and, quite frankly, appears to have been abandoned.  Hence, it will not be further considered.

### 2. Knellinger's Constitutional Arguments Respecting The Rights Of Criminal Defendants

Knellinger also argues that § 3509(m) deprives criminal defendants of their right to a fair trial under the United States Constitution.[1]  (See Def.'s Supp. Br. in Supp. Of Mot. to Dismiss at 16-17; Def.'s Reply at 6-11.)  The constitutional rights which produce a "fair trial" are implicated by the restrictions imposed by § 3509(m) on the custody and reproduction of child pornography that is the subject of a criminal proceeding.  However, while those restrictions are serious and significant, they have limited reach. Defendants, including Knellinger, may obtain, by court order, copies of child pornography when the United States cannot provide an "ample opportunity for inspection, viewing, and examination at a Government facility."  Consequently, § 3509(m) is not an absolute prohibition on copying child pornography for inspection outside a Government facility.  That being the case, Knellinger's facial challenge to the statute can succeed only if he can demonstrate that no application of the statute's safety valve provision ("ample

---

[1] Knellinger's "fair trial" argument seems to encompass many of the various rights afforded by the Fifth and Sixth Amendments. See Strickland v. Washington, 466 U.S. 668, 684-85 (1984) ("The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment").

opportunity for inspection, viewing, and examination at a Government facility") would be sufficient to protect the constitutional rights of any criminal defendant. See United States v. Salerno, 481 U.S. 739, 745 (1987). Knellinger's argument therefore turns on the definition of "ample opportunity."

While the statute does not define "ample opportunity," that term must be read to include at least every opportunity for inspection, viewing, and examination required by the Constitution. If read in that way, any opportunity for inspection that falls short of that mark would enable a court to order a copy given to the defendant for inspection outside a "Government facility." Long-established canons of statutory construction require the Court to read "ample opportunity" in just this way. As the Supreme Court reiterated in Edward J. DeBartolo Corp. V. Florida Gulf Coast Building & Constr. Trades Council:

> '[t]he elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.' This approach ... also recognizes that Congress, like this Court, is bound by and swears an oath to uphold the Constitution. The courts will therefore not lightly assume that Congress intended to infringe constitutionally protected liberties or usurp power constitutionally forbidden it.

485 U.S. 568, 575 (1988) (citing Grenada County Supervisors v. Brown, 112 U.S. 261, 269 (1884)). Because Knellinger does not explain why "ample opportunity" cannot reasonably be read to, at a minimum, protect the constitutional rights of defendants, the Court

8

need not further address Knellinger's facial constitutional challenge.[2]

Moreover, "ample opportunity" may, in some circumstances, include greater access than what the Constitution alone would require. In interpreting this same statutory provision, another district court noted that "[t]he word 'ample' means 'generous or more than adequate in size, scope, or capacity.'" United States v. O'Rourke, No. CR 05-1126-PHX-DGC, 2007 WL 104901, *4 (D. Ariz. Jan. 17, 2007) (citing Webster's New Collegiate Dictionary 39 (1981)). As discussed above, the opportunity to inspect, view, and examine contemplated by § 3509(m)(2)(B) requires, at a minimum, whatever opportunity is mandated by the Constitution; therefore, an opportunity that is "generous" or "more than adequate" may, in some circumstances, require more access than what would be mandated by the Constitution alone.[3]    Under that interpretation of "ample

---

[2] To the extent that Knellinger contests this reading of the statute, he does not explain why this reading is unreasonable, nor does he offer an alternative definition for "ample opportunity." (See Def.'s Reply at 6.)   Indeed, even after the evidentiary hearing in this matter, which focused largely on the meaning of "ample opportunity," Knellinger has never adequately explained why the Court cannot order production of the child pornography if the Government has failed to provide an ample opportunity for inspection, viewing, and examination at a Government facility. (See Def.'s Post-Hearing Br.; Def's Post-Hearing Reply Br.)

[3] The O'Rourke court similarly construes "ample opportunity." While, in rejecting the defendant's constitutional challenges to § 3509(m), the court noted that "ample opportunity" might be "coterminous with the requirements of due process," and that "ample opportunity" requires "due-process-level access" to evidence, the court ultimately held that the defendant was not entitled to a copy

opportunity," the Court need not necessarily resolve Knellinger's as applied constitutional challenge in order to determine whether Knellinger has been afforded an "ample opportunity" to access his hard drive.  If the statutorily required ample opportunity to access his hard drive has not been provided, the Court may order production of the hard drive without deciding whether the Constitution would also compel its production.

As the United States correctly argues, whether there is ample opportunity for inspection, viewing, and examination is a factual issue that must be resolved on the record in each case.  Thus, the threshold task here is to assess, on the record made in this case, whether Knellinger has been afforded an ample opportunity to inspect, view, and examine the hard drive at a Government facility. If the Court finds that the statutorily required ample opportunity has been provided, Knellinger's constitutional rights will, by definition, have been protected.[4]  If ample opportunity has not

_____

of his computer hard drive because his particular concerns did not "amount to a denial of due process or of an ample opportunity to inspect the hard drive." 2007 WL 104901, *6 (emphasis added).  If "ample opportunity" were necessarily "coterminous" with the requirements of due process, there would have been no need for the court to have considered the defendant's alleged difficulties with § 3509(m) under the requirements of both due process and "ample opportunity." Thus, the O'Rourke court, like this Court, concluded that "ample opportunity" means, only at a minimum, the opportunity for inspection, viewing, and examination required by the Constitution.

    [4] This conclusion accords with those reached by the only courts to have previously considered the constitutionality of § 3509(m). See United States v. Johnson, 456 F. Supp. 2d 1016 (N.D.

been provided, the statute itself renders Knellinger's as applied constitutional challenge moot because the statute permits the Court to provide a copy of the materials to the defense.   Here, as discussed below, the Court finds that ample opportunity has not been provided on the facts of this case, so there is no need further to consider Knellinger's as applied challenge to the statute.

## C.   Knellinger's Opportunity To Inspect, View, And Examine The Child Pornography In This Case

The United States contends that it has afforded an adequate opportunity for inspection, viewing, and examination by offering to provide a private room in the Richmond, Virginia offices of the Federal Bureau of Investigation where counsel and his experts can access the hard drive.   Knellinger disputes that contention.

An evidentiary hearing was held on November 6, 2006 to resolve this factual dispute.   In support of his position, Knellinger presented expert testimony from one computer forensic expert, two digital video experts, and a trial attorney with extensive experience handling child pornography cases.[5]   The United States

_____

Iowa 2006); O'Rourke, No. CR 05-1126-PHX-DGC, 2007 WL 104901; United States v. Butts, No. CR 05-1127-PHX-MHM, 2006 WL 3613364 (D. Ariz. Dec. 6, 2006).

[5] The United States challenges the relevance of the testimony provided by Knellinger's digital video experts because they do not have extensive experience in child pornography cases.  (See United States Resp. in Opp. to Def.'s Post-Hearing Br. Concerning the Constitutionality of 18 U.S.C. § 3509(m) at 20-22.)  However, while the experts have minimal experience in child pornography cases,

presented no evidence.

Knellinger's first witness, Mark Vassel, is a computer forensic expert who already has conducted an analysis of Knellinger's hard drive in this case. Vassel, however, does not need to view images of child pornography to conduct the sort of analysis in which he specializes, so, while he expressed some frustration with the strictures of § 3509(m), the statute apparently did not prevent him from doing his job. (See Evidentiary Hr'g Tr. ("Hr'g Tr.") 9, 33, Nov. 6, 2006.)

Knellinger's second witness, Louis Sirkin, is a trial lawyer based in Cincinnati, Ohio. Sirkin has extensive experience as a defense attorney in child pornography cases, and was primary counsel in <u>Ashcroft v. Free Speech Coalition</u>, 535 U.S. 234 (2002). (Hr'g Tr. 75.) In <u>Ashcroft</u>, the Supreme Court of the United States struck down certain provisions of the Child Pornography Prevention Act of 1996 as overbroad. 535 U.S. at 258. The provisions were overbroad because they proscribed images that were neither obscene nor produced with real children. <u>See</u> <u>id.</u> at 250. Therefore, Sirkin noted, a defendant like Knellinger, who is not charged with violating obscenity laws, may argue that the child pornography he

---

they have extensive experience in the sort of analysis that would be conducted in a child pornography case. The experts are therefore qualified to assist the Court in understanding the type of analysis that Knellinger seeks to undertake. If the United States had wanted to challenge the substantive testimony of these two experts, it could have put on testimony from its own experts. The United States chose not to do so.

possessed was not produced using real minors.[6]   (Hr'g Tr. 83.)
Sirkin himself has pursued that "viable defense" and has had child
pornography analyzed by experts in order to determine whether or
not the children depicted were real.  (Id. at 120.)  According to
Sirkin, such an analysis is "absolutely essential" where a
defendant intends to pursue that line of defense.[7]  (Id. at 87.)

Knellinger's final two witnesses were the types of digital
video experts who could conduct the analysis described by Sirkin as
"absolutely essential" in a case like Knellinger's.  Both described
the great cost and effort that would be required to conduct their
analyses in a Government facility.  Tom Owen, the third witness,
testified that he would normally charge approximately $135,000 to
analyze the child pornography in this case, but that he would
charge approximately $540,000 if he had to analyze those materials
away from his offices in a Government facility.  (Id. at 163-64.)
That figure does not include the cost of transporting the quite
extensive collection of equipment that is necessary to his
analysis, which would take approximately one week and three men to

---

[6]  Knellinger is charged in this case with transporting,
attempting to transport, receiving, and possessing child
pornography made only with real minors.  See 18 U.S.C. §
2256(8)(A).  That, of course, does not foreclose the defense that
the images are not real minors but, instead, are computer-generated
images.

[7]  Sirkin also testified at length about many practical
problems that § 3509(m) will create for defense attorneys.  While
helpful to the Court, a recitation of his testimony is not
necessary here.

move, and which would require "a box truck... 20 feet long and 10 feet wide."[8]  (Id. at 152-53.)

Moreover, even if Owen were able to move his equipment to a Government facility, he would have concerns about its reliability after the move.  (Id. at 165.)  And, even if he thought his equipment was functioning properly, his personal ability to analyze the evidence thoroughly and carefully would be compromised to such a degree that he "wouldn't be able to service the client or the attorney" effectively.  (Id. at 165-66.)  The practical consequence of all these difficulties is that, while Owen's testimony indicates that it would be conceptually possible for Owen to conduct his time-consuming analysis in a Government facility, Owen would not agree to work on a case like Knellinger's because he could not feasibly move his equipment to, or properly do his work in, a Government facility.  (Id. at 165.)

Knellinger's final witness, James Griffin, testified similarly.  Griffin has never moved all of his digital video analysis equipment from his offices to another location, but he calculated that such an effort would take more than "several days" each time he was required to disassemble and transport his

---

[8] It would be necessary for Owen or any other expert to bring his own equipment because the United States has not offered to provide the requisite equipment in a Government facility for the expert's use.  (See Hr'g Tr. 268-69; United States' Resp. in Opp. to Def.'s Post-Hearing Br. Concerning the Constitutionality of 18 U.S.C. § 3509(m) at 22-23.)  This is not surprising, because Owen's equipment costs approximately $350,000.  (Hr'g Tr. 167.)

equipment.  (Id. at 232.)  Like Owen, Griffin testified that he would also have to charge significantly more for his services if he conducted an analysis of child pornography outside his offices in a Government facility, even if transportation of his equipment were possible. (Id. at 235.)  Finally, Griffin also testified that, although it might theoretically be possible to bring his own equipment to a Government facility and analyze the child pornography images outside his offices, he would not agree to work on a case like Knellinger's because of the difficulty associated with moving equipment to, and adequately performing his analytical work in, a Government facility.  (Id. 242.)

In sum, Knellinger's witnesses established that assessment and presentation of a viable legal defense in Knellinger's case requires expert analysis and testimony, and that qualified experts could not reasonably be expected to agree to conduct the required analysis given the extremely burdensome practical effects of § 3509(m) on the reliable discharge of their obligations.  The United States presented no witnesses or other evidence to controvert that offered by Knellinger.

Although the United States put on no evidence of its own, it was able, on cross-examination, to make two salient, but ultimately non-dispositive points: (1) that none of Knellinger's technical witnesses were aware personally of a case in which child pornography had been produced using entirely virtual children; and

(2) that the analysis sought by Knellinger could, in abstract theory, be conducted in a Government facility.  The United States therefore argues that Knellinger is pursing a "fairy tale" defense and that he has not made sufficient efforts to comply with § 3509(m).  (United States' Resp. in Opp. to Def's Post-Hearing Br. Concerning the Constitutionality of 18 U.S.C. § 3509(m) ("United States' Resp.") at 5.)

The first point asks the Court to foreclose to Knellinger the opportunity to explore a potentially viable legal defense simply because it is novel.  The United States has cited no authority to support the principle that a district court is empowered to intrude into the investigation and preparation of potential defenses in a criminal case at such a preliminary stage and, in so doing, to peremptorily preclude the development of a potential defense.[9]

Moreover, in Ashcroft, the United States argued that "the possibility of producing [child pornography] images by using computer imaging makes it very difficult for it to prosecute those who produce pornography by using real children," and that experts "may have difficulty in saying whether the pictures were made by

_____

[9] Of course, it always is appropriate for a district court to assess whether requested evidence may be relevant to the case and to the defense thereof when deciding whether the evidence must be made available to the defense.  The United States has conceded that point by agreeing to make the hard drive available to Knellinger's counsel before § 3509(m) was enacted.  Moreover, the record developed since then shows that the hard drive could form the basis for a viable defense.  Neither § 3509(m) nor any other principle of law cited by the United States or known to the Court requires more.

using real children or by using computer imaging." 535 U.S. at 254. The rather obvious implication of that argument, of course, is that improvements in technology may make it increasingly difficult for laymen to distinguish pornography produced with real children from pornography produced with virtual children. Furthermore, the Supreme Court has recognized the potential availability of the defense that Knellinger wishes to develop. Id. at 254-55. And, this record establishes that a respected and competent lawyer has pursued this defense and has had child pornography analyzed by experts in assessing the availability of that defense. For the foregoing reasons and on this record, the Court is loath to foreclose to Knellinger the opportunity to explore the possibility that the child pornography at issue here was produced without the use of real children.[10]

As to the second point, the record here establishes that the defense theory being pursued by Knellinger requires a kind of analysis that cannot be conducted feasibly by outside experts in the facility as offered by the United States. Even though, as the United States pointed out, it is theoretically possible for outside experts to transport their equipment to a Government facility and

---

[10] After Ashcroft, Congress amended its child pornography statutes in a manner that still proscribes certain computer-generated images of child pornography. See 18 U.S.C. 2256(8)(b). As noted above, however, Knellinger is not charged under that definition of child pornography, so Knellinger's proposed "virtual child" defense is viable in this case.

conduct their analyses on-site, the practical reality is that experts would not agree to such terms and that Knellinger ultimately would be prevented from conducting his analysis at all. Considering the testimony from the legal and technical experts in this case and the absence of any opposing evidence, the Court concludes that, at least in this case, the record permits no other factual conclusion.

The United States also argues that Knellinger's request to analyze the child pornography in this case is "disingenuous." (<u>Id.</u> at 3.)  The United States argues that Knellinger has not yet hired an expert like Owen or Griffin to conduct the analysis, and that Knellinger has not contacted the United States about conducting such an analysis in a Government facility were an expert like Owen or Griffin hired.  (<u>Id.</u> at 3-5.)  A simple explanation for this, however, is that, as far as the Court can tell from the record, a reasonable expert would not agree to conduct the analysis required in this case because of the cost and difficulty of moving the necessary equipment to, and adequately providing the appropriate services in, a Government facility.  Therefore, it would make sense that Knellinger has not yet hired an expert because Knellinger has not known whether or not he will be given a copy of the child pornography in this case.  Moreover, the record provides good reason to conclude that Knellinger is not, as the United States puts it, simply engaging in "litigation for litigation's sake"

because of the great cost associated with conducting the analysis that the evidence shows to be appropriate here.  (United States' Resp. at 5.)

Because the United States did not present evidence that contradicts the evidence put forth by Knellinger, and because Knellinger's witnesses were both credible and relevant, the Court accepts the showing made by Knellinger's experts as true.  On this record, which includes the evidence from Knellinger's legal and technical expert witnesses, the Court finds that technical expert witnesses are a necessary component of the assessment and presentation of a viable legal defense that is available to Knellinger, and that the United States has not provided Knellinger an ample opportunity for those experts, or counsel in conjunction with the experts, to conduct the required analysis of the child pornography in this case at a Government facility.  The Court further concludes that the analysis described by Owen and Griffin at the evidentiary hearing constitutes an "examination" within the plain meaning of 18 U.S.C. § 3509(m)(2).[11]

Thus, under the terms of § 3509(m), it is necessary to order production of a copy of the hard drive to the defense.  Production is necessary to ensure Knellinger an ample opportunity to conduct the examination described by Owen and Griffin at the evidentiary hearing, and to give his counsel an opportunity to participate in

---

[11] To "examine" means "to test by an appropriate method," and an "examination" is "the act or process of examining."  Webster's Third New International Dictionary 790 (1961).

that examination in order to evaluate its ramifications for the legal defenses Knellinger might raise.[12]

However, the Court also is mindful that Knellinger has not yet advised that he has retained expert witnesses to examine the copy of the hard drive here at issue.  And, the record establishes that a copy of the hard drive is of no use to the defense unless there is a defense expert to examine the copy.  Therefore, it would be contrary to the provisions of § 3509(m) to require delivery of a copy of the hard drive unless the defendant promptly advises the Court that it has retained an expert witness for that purpose.

In sum, the statute, § 3509(m), can be given a reasonable construction which avoids the need for a constitutional decision in this case.  That construction simply requires the Court to ascertain on the basis of a record whether the statutorily required ample opportunity to examine, view, and inspect the hard drive has been given.  If not, the statute permits a copy to be supplied.  On this record, the ample opportunity has not been provided, and production of a copy, on certain terms, will be required.

---

[12] The United States has conceded that "[a]mple opportunity also requires that the defense is able to prepare any exhibits it deems necessary to be used in support of their case." (See United States' Resp. at 17.)  That issue is not presently before the Court, so a mirror image copy of Knellinger's hard drive will not be allowed, at this point, to be used by Knellinger's experts or counsel to produce exhibits.  That issue will be taken up, as necessary, at a later time.

## CONCLUSION

For the foregoing reasons, Knellinger's motion to dismiss the indictment based on the unconstitutionality of § 18 U.S.C. § 3509(m) (Docket No. 46) is denied. However, because the Court also concludes that the United States cannot provide Knellinger an ample opportunity to inspect, view, and examine the child pornography listed in the Superseding Indictment, the Court, pursuant to 18 U.S.C. § 3509(m)(2), will order a mirror image copy of Knellinger's hard drive provided to Knellinger's counsel and made available to either Tom Owen or James Griffin if counsel for Knellinger certifies to the Court that the copy will be used for the assessment or presentation of a defense as discussed by Owen, Griffin and Sirkin during the evidentiary hearing held on November 6, 2006. Custody and use of that copy will be subject to an appropriate protective order that, inter alia, will punish any distribution or publication not authorized.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

                                        /s/
                                Robert E. Payne
                                United States District Judge

Richmond, Virginia
Date: January 25, 2007

21